# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**JERRY GONZALES,**

     **Plaintiff,**

v.                              **Case No.  8:11-cv-1397-T-30TGW**

**PASCO COUNTY BOARD OF COUNTY COMMISSIONERS,**

     **Defendant.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 21), Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. 28), Plaintiff's Motion to Amend the Complaint to Conform to the Evidence (Dkt. 34), Defendant's Response in Opposition to Plaintiff's Motion to Amend the Complaint to Conform to the Evidence (Dkt. 36), and Defendant's Unopposed Motion to Extend Pre-Trial Statement Deadline (Dkt. 37).  The Court, having reviewed the motions, responses, record evidence, and being otherwise advised in the premises, concludes the motion for summary judgment should be granted, the motion to amend the complaint should be denied, and the motion to extend the pretrial statement should be denied as moot.

## BACKGROUND FACTS[1]

Plaintiff Jerry Gonzales ("Gonzales") initiated this action by filing a four-count complaint against Defendant Pasco County Board of County Commissioners ("Pasco County"). In Count I, Gonzales alleges Pasco County violated his rights under the Family Medical Leave Act ("FMLA") by retaliating against him for attempting to exercise his FMLA rights. In Count II, Gonzales alleges Pasco County violated Florida Statute § 440.205 by discharging him in retaliation for exercising his workers' compensation rights. Gonzales withdraws his racial discrimination claims in Counts III and IV in his response to Pasco County's motion for summary judgment.

Pasco County employed Gonzales as a grounds keeper and crew leader from 1993 until December 27, 2010. While working at Sam Pasco Park in Zephyrhills, Gonzales injured himself while attempting to dismount from a tractor on July 28, 2010. He was taken to Florida Hospital where he was diagnosed with bulging discs in his lower back. He then timely completed and submitted his work related accident report and treated with workers' compensation doctors for several months.

On November 3, 2010, Dr. Delgao, Gonzales' treating workers' compensation doctor, deemed Gonzales at maximum medical improvement, finding that "he should certainly return back to work with regular duty without restrictions, but using good body mechanics. He is

---

[1]These facts are taken in a light most favorable to Gonzales, the non-movant on the summary judgment motion.

being discharged from my care." (Dkt. 22-1, Ex. 15).  Dr. Delgado suggested that Gonzales seek treatment from his primary doctor for his continued complaints of lower back pain.

Around this same time, Pasco County transferred Gonzales to the west side of the county under Parks and Recreation Manager Martin Paventi.  Gonzales called Paventi to advise that he had been released back to work from Dr. Delgado and to inform Paventi that he was still in pain.  The record is disputed whether Paventi told Gonzales that he would be put on sick leave until further notice or whether Paventi would mark him down for sick leave only for the dates of November 3rd, 4th, and 5th.  However, it is not disputed that Pasco County's policy was for the employee to keep his supervisor informed about absences, and Paventi testified that he told Gonzales to call every week with an update.

Gonzales sought treatment from his primary care physician, Dr. Finnerty.  On November 5, 2010, she gave Gonzales work restrictions, including "no lifting, running, or walking, etc. limit driving to 10 miles," and noted that he was "basically limited to sedentary duties until cleared by Dr. Willey." (Dkt. 33-1, Ex. 3).  Dr. Finnerty referred Gonzales to Dr. Willey for an orthopedic evaluation.  Per Paventi's request, Gonzales faxed Dr. Finnerty's restrictions to Paventi's office.  Paventi informed Gonzales that there was no position currently open that could accommodate these light duty work restrictions.

On November 9, 2010, Gonzales presented to Dr. Willey who imposed work restrictions of no driving over thirty minutes and referred him to a pain management specialist for injections. (Dkt. 33-1, Ex. 4).  Gonzales faxed a copy of these examination notes to Kim Clawson, Paventi's secretary.  The record is unclear what date Clawson actually

confirmed she received the faxes; however, it is not disputed that she received them no later than November 16, 2010.

Around November 11, 2010, Gonzales exercised his one-time change of doctors for his workers' compensation claim, and was scheduled for an appointment with Dr. Maniscalco for December 20, 2010. Between his initial workers' compensation release by Dr. Delgado on November 3, 2010, and his second workers' compensation release by Dr. Maniscalco on December 20, 2010, Gonzales was considered by Pasco County to be on medical leave, not on workers' compensation or FMLA leave.

On December 6, 2010, Dr. Weisman, a pain management specialist recommended by Dr. Willey, suggested Gonzales have injections in his back for pain but that he wait until after his workers' compensation appointment with Dr. Maniscalco.

Because Gonzales had not returned to work, Pasco County sent FMLA paperwork to Gonzales on December 7, 2010. The FMLA paperwork indicated that the deadline for returning the medical certification was December 23, 2010. Gonzales received the FMLA paperwork on December 9, 2010, and he attempted in the next several weeks to have one of his physicians complete the FMLA certification. Unfortunately, Gonzales never submitted any of the FMLA paperwork or medical certification to Pasco County.

Gonzales initially tried to have Dr. Finnerty fill out the FMLA forms, but she declined, informing him that his "treating physician" must fill out the medical certification. Gonzales next asked Dr. Willey to fill out the FMLA paperwork. On December 14, 2010, Donna from Dr. Willey's office called Gonzales to ask why Dr. Willey needed to fill out the

certification and she requested that someone from Pasco County's Risk Management contact Dr. Willey regarding the paperwork. It is undisputed that Gonzales called Risk Management on December 15, 2010, and requested Jane Calano to call Dr. Willey's office regarding the FMLA forms. However, as Calano testified in her deposition, the Department of Labor forbids an employer from speaking to an employee's physician regarding FMLA leave. As such, Calano did not return Gonzales' call or fulfill his request to call Dr. Willey.

On December 15, 2010, Donna again contacted Gonzales and instructed him to have Dr. Weisman fill out the FMLA paperwork because he was the physician administering treatment. Gonzales testified that Dr. Weisman declined to sign the FMLA forms until after Dr. Maniscalco's appointment because he believed injections might not be necessary. At this point, Gonzales attempted to reach Barbara DeSimone in Personnel; however, she was not available and did not return his call before his termination on December 27, 2010.

On December 20, 2010, Dr. Maniscalco saw Gonzales for his second workers' compensation evaluation. Like Dr. Delgado, Dr. Maniscalco found Gonzales had "reached maximum medical improvement and is capable of full gainful employment without limitation. He has sustained 0% impairment of the whole body as a result of the industrial injury of 7/28/10." (Dkt. 22-1, Ex. 19). Gonzales testified that neither Dr. Maniscalco nor Pasco County informed him he was required to return to work following this second evaluation.

Gonzales did not return to work on December 21st, 22nd, or 23rd, nor did he contact Paventi to inform him he was out on sick leave. On December 27, 2010, the next business

day, Pasco County sent Gonzales a termination letter informing him that it considered him to have resigned his position in accordance with Section A5.10 of the Career Service Manual because of his three consecutive absences from workdays without approved leave.  (Dkt. 22-1, Ex. 20).

Gonzales received the termination letter on December 30, 2010.  There is no evidence that Dr. Weisman completed the FMLA certification or that Gonzales ever submitted any FMLA paperwork to Pasco County, either before or after December 27, 2010.

Gonzales filed the instant lawsuit against Pasco County on June 24, 2011.  The Court entered a Scheduling Order setting the dates for completion of fact discovery and submission of dispositive motions before the pretrial conference set for February 5, 2013.  Pasco County moved for summary judgment on November 19, 2012.  Gonzales moved to amend the complaint to add a FMLA interference claim on December 17, 2012.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action

will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

I.   **FMLA Retaliation Claim Pursuant to 29 U.S.C. § 2615(a)(2)**

The FMLA entitles an eligible employee to take twelve workweeks of leave during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.   29 U.S.C. § 2612(a)(1)(D).  In addition to taking twelve weeks of leave at once, an employee may take intermittent leave in separate blocks of time because of a single qualifying medical reason. 29 C.F.R. § 825.202(a).  To preserve these rights to take leave, the FMLA creates two types of claims: interference claims, in which an employee alleges that his employer denied him a benefit guaranteed under the Act, 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. 29 U.S.C. § 2615(a)(2).

Retaliation and interference claims have different standards of proof.  To state an interference claim, a plaintiff must demonstrate that he was entitled to a benefit under the FMLA and the employer denied him the benefit.  *Strickland v. Water Works & Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206-07 (11th Cir. 2006).  The employer's motives are irrelevant.  *Id.* at 1208.  In contrast, to succeed on a retaliation claim a plaintiff must show that the employer acted with discriminatory or retaliatory animus when the plaintiff was discharged.  *Id.* at 1207.

An employee's right to FMLA leave is subject to the certification requirements of 29 U.S.C. § 2613.  29 U.S.C. § 2612.  Employers "may require that a request for leave . . . be

supported by a certification issued by the health care provider of the eligible employee." 29

U.S.C. § 2613(a).  A certification is sufficient if it states

> (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; . . . (4)(B) for purposes of leave under section 2612(a)(1)(D) of this title, a statement that the employee is unable to perform the functions of the position of the employee.

29 U.S.C. § 2613(b).

Congress requires that an "employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a).  Employers must provide notice of such a requirement and of the anticipated consequences for failing to comply every time an employee requests FMLA leave.  29 C.F.R. § 825.305(d).  When the leave is unforeseeable, employers must allow employees at least fifteen (15) calendar days to comply with the request for certification. 29 C.F.R. § 825.305(b).  Specifically, "[t]he employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts." *Id.*  The Department of Labor also mandates that "[t]he employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any deficiency." 29 C.F.R. § 825.305(d).  Yet, "[a]n incomplete certification is not the same as a certification that is non-existent or that has not been provided to the employer." *Baldwin-Love v. Elec. Data Sys. Corp.*, 307 F. Supp. 2d 1222, 1234 (M.D. Ala. 2004)

In the absence of direct evidence of discrimination by the employer, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is applied in evaluating FMLA retaliation claims.  To state a claim of retaliation an employee must first establish a prima facie case of retaliatory discharge.  An employee must show that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse employment action.  *Strickland,* 239 F.3d at 1207.  Once an employee establishes a prima facie case, the burden of production shifts to the employer "to articulate a legitimate reason for the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc.,* 439 F.3d 1296, 1297 (11th Cir. 2006).

If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* at 1298 (*quoting Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000)).  To show pretext, the employee may rely on evidence that he already produced to establish his prima facie case.  *Martin v. Brevard Cnty. Pub. Sch.,* 543 F.3d 1261, 1268 (11th Cir. 2008).

Upon review of the record, the Court concludes that Pasco County is entitled to summary judgment on the FMLA retaliation claim because Gonzales cannot establish a prima facie case.  Furthermore, even assuming Gonzales could set forth one, Pasco County

articulated a legitimate, non-discriminatory reason for Gonzales' termination and Gonzales failed to establish this reason was pretext for discrimination.

The controlling issue is whether Gonzales engaged in protected activity under the FMLA to satisfy the first element of a plaintiff's prima facie case.[2]  At least one court has held a request for FMLA leave is qualifying activity.  *See Beveridge v. HD Supply Waterworks, L.T.D.*, 2009 WL 4755370, *11 (M.D. Ga. Dec. 7, 2009) ("As to the first element, a request for FMLA qualifying medical leave is protected activity under the FMLA.").  However, in *Beveridge v. HD Supply Waterworks, L.T.D.*, the defendant fired the plaintiff within hours of the plaintiff's request for leave.  *Id.* at *4.  Thus the analysis does not translate to a situation, such as here, where the employee was terminated after being allowed more than the statutorily-mandated fifteen calendar days and still failed to comply with the certification requirements.  Moreover, the record reflects that Pasco County voluntarily sent Gonzales the FMLA paperwork, not that Gonzales requested FMLA leave.

Failure to meet the certification requirements renders the employee's absence unprotected by the FMLA.  *See, e.g., Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000); *Baldwin-Love*, 307 F. Supp. 2d at 1229-30; *Young v. Russell Corp.*, 2008 WL 5412782, *3 (M.D. Ala. Dec. 29, 2008); 29 C.F.R. § 825.313(b) ("If the employee never produces the certification, the leave is not FMLA leave."); *but cf. Clark v. Macon Cnty. Greyhound Park, Inc.*, 727 F. Supp. 2d 1282, 1292-93 (M.D. Ala. 2010) (denying summary judgment because

---

[2]Gonzales failed to cite to any legal authority for the proposition that his phone calls with Pasco County concerning his FMLA paperwork constitute protected activity under the FMLA.

plaintiff requested FMLA leave and presented sufficient proof that she took time off because of a serious health condition since her physician completed the FMLA certification but her employer had misinformed her about where to submit it). Furthermore, "[i]f these uncertified, hence unprotected, absences violate an attendance policy, an employer may terminate an employee without violating the FMLA." *Baldwin-Love*, 307 F. Supp. 2d at 1229-30.[3]

To prove he engaged in statutorily protected activity, Gonzales must show that Pasco County was aware that his absence qualified as leave under the FMLA. *See Lee v. U.S. Steel Corp.*, 450 Fed. App'x 834, 838 (11th Cir. 2012) (affirming district court's grant of summary judgment because plaintiff failed to show he engaged in statutorily protected activity or that his termination was casually related to any protected activity).

Gonzales admits Pasco County sent him FMLA paperwork and a certification form on December 7, 2010. (Dkt. 22 at 112:23-113:9). It is also undisputed that Gonzales knew December 23, 2010, was the deadline for returning the certification. (Dkt. 23 at 37:24-38:1;

---

[3]Gonzales, although not arguing such, possibly could survive a motion for summary judgment based on a FMLA interference claim due to equitable estoppel. He testified that Holly, Risk Management's secretary, told him on December 15, 2010, "to get the FMLA paperwork in as soon as possible." Dkt. 22, p.120:8. *See Townsend-Taylor v. Ameritech Serv., Inc.*, 523 F.3d 815, 817 (7th Cir. 2008) ("It can be 'interference' - or, what amounts to the same thing, a basis for postponing the submission deadline by operation of the doctrine of equitable estoppel - to provide an employee with misleading instructions that cause him to miss a critical deadline for seeking FMLA leave."). However, Gonzales does not allege an interference claim, does not argue for equitable estoppel, and Holly's statement is not contradictory to the established December 23, 2010 deadline. Furthermore, the Eleventh Circuit has not adopted the estoppel doctrine in the FMLA context. *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1266 (11th Cir. 2008).

38:20-22).[4]  As of December 27, 2010, the date of his termination, the only evidence Pasco County had of Gonzales' alleged "serious medical condition" was that two workers' compensation doctors had released him back to work, he failed to return any certification for FMLA leave, and he had been absent from work without proper authorization for three consecutive workdays in violation of Pasco County's Career Service Manual.  Consequently, Gonzales' unprotected absences in violation of Pasco County's attendance policy permitted Pasco County to terminate his employment without violating the FMLA. *See Baldwin-Love*, 307 F. Supp. 2d at 1229-30.

Even assuming Gonzales used diligent efforts to return the certification within the fifteen-day period and should be entitled to an extension of his FMLA deadline, noticeably absent from the record is evidence that Gonzales ever received certification from any doctor for FMLA leave.  ("My understanding, [Dr.] Weisman said that they was going to fill out the letter and send them in.  I don't know if they did or didn't." (Dkt. 23 at 45:22-24)).  Nor did Gonzales submit any medical documentation in support of his "serious medical condition" that would permit a jury to find he qualified for FMLA leave.  There is simply no material disputed facts from which a reasonable jury could find he engaged in protected activity because there is no evidence Pasco County knew he suffered a "serious medical condition." Thus, Gonzales has failed to set forth a prima facie showing of FMLA retaliation.

---

[4]Alongside acknowledging the deadline of December 23, 2010, Gonzales states in his deposition that he was under the impression that he should "[j]ust get [the FMLA paperwork] in as soon as I can."  (Dkt. 23 at 39:6-13 and at 52:5-7).  This statement, although perhaps relevant to prove a FMLA interference claim, is not relevant for a FMLA *retaliation* claim.  *See supra* note 2.

However, even assuming Gonzales could set forth a prima facie case, his FMLA retaliation claim must still fail. Pasco County articulated a legitimate, non-discriminatory reason for Gonzales' termination: Gonzales violated Section A5.10 of the Career Service Manual by being absent without leave from his position for three consecutive workdays, December 21-23, 2010. To rebut this legitimate, non-discriminatory reason, Gonzales must show this proffered reason is pretext. "[A] reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (internal quotations omitted) (emphasis in original).

"A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). In order to show pretext and "meet the reason head on and rebut it," *id.*, a plaintiff may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's proffered reason. *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

Gonzales' burden is to show that Pasco County's reason is both false and he was actually terminated because of his request for FMLA leave. To rebut Pasco County's legitimate reason, Gonzales points to the "inconsistency" of the termination letter stating he had been absent without approval since November 19, 2010, even though he was paid sick

leave for a month following that date.  The termination letter states he violated the Career Service Manual by being absent for three consecutive workdays without proper authorization.  Gonzales was released back to work by a second workers' compensation doctor on December 20, 2010.  He was then considered absent without approval for the next three business days.  Pasco County terminated Gonzales on the next business day, December 27, 2010.  The termination letter references November 19, 2010, as the last date Gonzales had contacted his crew leader, Martin Paventi.  Gonzales had an ongoing obligation to maintain consistent contact with Paventi while out on sick leave.  He did not.  However, Pasco County continued to pay him sick leave until the second workers' compensation doctor determined whether he could return to work.  These facts do not show pretext because Pasco County's proffered reason is not false.  More important, Gonzales fails to point to anything in the record, such as an email or letter, that evinces Pasco County actually terminated him because of his "request" for FMLA leave.

As such, there are no disputed material facts and Pasco County's motion for summary judgment as to the FMLA retaliation claim is granted.

## II.    Retaliatory Discharge Pursuant to Fla. Stat. § 440.205

Section 440.205, Florida Statutes, provides that "no employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."  An employee may assert a cause of action for retaliatory discharge if an employer violates this section.  *Borque v. Trugreen, Inc.*, 389 F.3d 1354, 1357 (11th Cir. 2004).  To state a claim

under this section for retaliatory discharge, a plaintiff must present evidence that: (1) he engaged in statutorily protected expression; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between the two. *Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006). "Only after the plaintiff makes this prima facie case of discriminatory retaliation does the burden shift to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Id.*

Typically, "a plaintiff may use a showing of 'close' temporal proximity between the protected expression and the adverse employment action to establish causation." *Posada v. James Cello, Inc.*, 135 Fed. App'x 250, 252 (11th Cir. 2005). However, in the absence of any other evidence of causation, the Eleventh Circuit has held that a three month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation. *Drago,* 453 F.3d at 1308. Furthermore, "mere temporal proximity of [plaintiff's] constructive resignation to his requests for workers' compensation cannot establish the prima facie case required for a retaliation claim where the company took no affirmative action to remove [plaintiff] from the payroll until [plaintiff] abandoned his job." *Borja v. Hines Nurseries, Inc.*, 172 Fed. App'x 927, 929 (11th Cir. 2006).

Pasco County concedes that Gonzales engaged in statutorily protected conduct by filing a workers' compensation claim based on his injury of July 28, 2010, and subsequently suffered an adverse employment action by being terminated on December 27, 2010. Pasco County disputes there is a casual connection between the two because (1) the five-month gap establishes there was no temporal proximity and (2) Gonzales' failure to return to work

following his release back to work by two workers' compensation doctors was an intervening cause that severed any connection. Finally, Pasco County argues that it would be entitled to summary judgment because Gonzales cannot show any evidence that its legitimate, non-discriminatory reason was pretext for retaliation.

The record reflects that Gonzales collected workers' compensation benefits until November 3, 2010, when Dr. Delgado released him back to work. From November 3, 2010, to December 20, 2010, Gonzales was on sick leave, *not* workers' compensation benefits. Gonzales exercised his right to a one-time change of doctor and second workers' compensation evaluation on December 20, 2010. The second workers' compensation physician, Dr. Maniscalco, also released Gonzales back to work and found him at zero impairment. Gonzales was absent without approval for the next three days and finally terminated on December 27, 2010.

Clearly, if counting from the time he claimed workers' compensation benefits in July 2010, Gonzales cannot rely upon temporal proximity to establish causation due to the five month lapse. The statute's language says "claim for compensation or attempt to claim compensation," not medical evaluation, so the December date should not be used to calculate temporal proximity. But even assuming that the second evaluation was a "statutorily protected activity," Gonzales fails to point to any affirmative action by Pasco County to terminate him until after he constructively resigned by being absent without approval in violation of the Career Service Manual. *Borja*, 172 Fed. App'x at 929. Therefore, he fails to show causation and to establish a prima facie case.

Lastly, assuming Gonzales could demonstrate a prima facie case, for the same reasons set forth in the FMLA retaliation section, he fails to show Pasco County's legitimate, non-retaliatory reason is pretext.

As such, there are no disputed material facts and Pasco County's motion for summary judgment as to the retaliatory discharge based on a workers' compensation claim is granted.

## MOTION TO AMEND STANDARD OF REVIEW

Gonzales and Pasco County address the motion to amend the complaint under Federal Rule of Civil Procedure 15(a).  However, the Court finds that Rule 16(b) governs the instant motion because of the procedural posture of the case, although the Court finds that the outcome is the same under the more liberal Rule 15(a) standard of review.  Because Gonzales fails to show good cause for his delay in bringing this motion, Gonzales' motion to amend the complaint is denied.

Federal Rule of Civil Procedure 16 requires a district court to enter a scheduling order that dictates the time within which the parties must join additional parties, amend the pleadings, file motions, and complete discovery. Fed. R. Civ. P. 16(b).  "When a party asks to amend a pleading after the applicable scheduling order deadline has passed . . . the party is in effect seeking to modify the scheduling order deadlines." *Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc.*, 648 F. Supp. 2d 1371, 1375 (M.D. Fla. 2009) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).  The scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b).  "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party

seeking the extension.'" *Sosa*, 133 F. 3d at 1418 (citing Fed. R. Civ. P. 16 advisory committee's note)

Under the Eleventh Circuit's case law, the key to establishing good cause for an untimely amendment is demonstrating diligence. *Auto-Owners Ins. Co.*, 648 F. Supp. 2d at 1375. Three factors are relevant to this inquiry: "(1) whether the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period; (2) whether the information supporting the proposed amendment was available to the plaintiff; and (3) even after acquiring information, whether the plaintiff delayed in asking for amendment." *Id.* (quoting *Pioneer Int'l (USA), Inc. v. Reid*, 2007 WL 4365637, at *2 (M.D. Fla. Dec. 12, 2007)); *see Sosa*, 133 F. 3d at 1418-19.

## DISCUSSION

The Court's scheduling order of August 31, 2011, provides hard deadlines for third-party joinders, fact discovery, expert disclosures, expert discovery, and dispositive motions. As quoted above, it also says that "motions to amend any pleading . . . after issuance of this [order] *are disfavored*." The Court admits this phrase is less clear than the other deadlines; however, it should be entitled to the same weight for purposes of the heightened standard of "good cause" under Rule 16 because logic dictates the deadline to amend a pleading must precede a fact discovery deadline. *See Wasdin v. Cheetah Transp., LLC*, 2006 WL 3554969, at *1 (M.D. Ga. Dec. 7, 2006) (stating that "the deadline for motions to amend is typically 30 days before the discovery completion deadline" and noting "[t]his distinction is important, because if Plaintiff's motion is treated as complying with the Court-mandated deadlines, Rule

15 of the Federal Rules of Civil Procedure applies, but if the motion is deemed to be in violation of the scheduling order, Rule 16 applies").

Gonzales made this motion to file an amended complaint on December 17, 2012, over a month *after* the dispositive motion deadline on November 5, 2012. Fact discovery has been closed since September 1, 2012. The trial is scheduled for the March 2013 trial term. If Gonzales is permitted to file a new version of his complaint, that would certainly render the scheduling order a nullity and force the trial date back in order to allow Pasco County the opportunity to conduct discovery on this new FMLA interference claim.

Gonzales plainly fails the good cause analysis because he cannot demonstrate diligence. Gonzales asserts that discovery uncovered "new" facts that support his theory of FMLA interference. But those same "new" facts, that Pasco County failed to return his phone calls, are alleged in his complaint and Gonzales chose not to raise an interference claim at that time. After his first deposition on May 25, 2012, Gonzales surely was aware of the facts he now argues support his interference claim. Finally, after his second deposition on October 12, 2012, he undisputedly knew these "new" facts. Yet he failed to move to amend the complaint during the fact discovery period. This shows a disregard for the information available to him. Moreover, he delayed filing this motion to amend until *after* the dispositive motion deadline. Thereby, Gonzales has not carried his burden to amend the scheduling order and his motion to amend the complaint is denied.

Even assuming the scheduling order lacks the clarity sufficient to warrant Rule 16 review, Gonzales is not entitled to amendment under Federal Rule of Civil Procedure 15(a).

Under Rule 15, a court should give leave to amend freely "when justice so requires." Fed. R. Civ. P. 15(a). "The district court, however, need not 'allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile.'" *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (quoting *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)).

Gonzales unduly delayed in moving to amend his complaint. At this stage, it would be unduly prejudicial to Pasco County to allow amendment because discovery would have to be reopened and Gonzales' deposition taken for a third time. Pasco County has prepared for trial which is set for March 2013. Thus, even under the more liberal Rule 15(a) standard, Gonzales still is not entitled to amendment.

It is therefore ORDERED AND ADJUDGED that:

1.    Defendant's Motion for Summary Judgment (Dkt. 21) is GRANTED.

2.    Plaintiff's Motion to Amend the Complaint to Conform to the Evidence (Dkt. 34) is DENIED.

3.    Defendant's Unopposed Motion to Extend Pre-Trial Statement Deadline (Dkt. 37) is DENIED as moot.

4.    The Clerk of Court is directed to enter final judgment in favor of Defendant and against Plaintiff.

5.      The Clerk of Court is directed to close this case and terminate any pending

motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on January 17, 2013.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**<u>Copies furnished to:</u>**
Counsel/Parties of Record

S:\Odd\2011\11-cv-1397.sumjud&amendcomplaint.frm